UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


THOMAS BAILEY,

       Plaintiff

v.                                    CIVIL ACTION NO. 2:05-0806

GEICO GENERAL INSURANCE COMPANY,

       Defendant


MEMORANDUM OPINION AND ORDER


       Pending before the court are cross motions for summary judgment by the defendant, Geico General Insurance Company ("GEICO"), and the plaintiff, Thomas Bailey, filed respectively on March 1 and March 2, 2006.


I.


       On August 24, 2005, Bailey, instituted this action against GEICO in the Circuit Court of Nicholas County. (Jt. Stip. ¶ 25). On September 29, 2005, GEICO removed. (Not. of Remov.).

       According to the parties' Joint Stipulation of Facts, Bailey contacted GEICO by telephone on April 21, 2004, and requested a policy of automobile insurance. (Jt. Stip. ¶ 1). During that telephone conversation, Bailey requested bodily

injury liability coverage, uninsured motorist bodily injury liability coverage, and underinsured motorist bodily injury liability coverage, all with limits in the amounts of $100,000 per person and $300,000 per accident ($100,000/$300,000).  (Id. ¶ 2).  GEICO informed Bailey that it would mail a new business package to him. (Id. ¶ 3).  Additionally, Bailey provided GEICO with his checking account information so that his first payment of $85.19 could be electronically debited from his account.  (Id. ¶ 4).  This payment was post-dated and debited from Bailey's account on May 21, 2004. (Id.)  Prior to being insured by GEICO, Bailey was insured through a policy of insurance issued by Nationwide, which policy was to expire on May 26, 2004. (Id. ¶ 21).  The GEICO policy issued to Bailey was for the six-month period from May 26 to November 26, 2004.  (Id. ¶ 7).

GEICO mailed the new business package to Bailey, which contained, among other things (1) the policy, issued under date of April 22, 2004, (2) a two-page Declarations statement, dated April 22, 2004, listing the various coverages just as requested by Bailey, (3) the premiums associated with each coverage, (4) a statement of the total premium, (5) policy identification cards and an invoice, and (6) an Underinsured/Uninsured Motorist Coverage Offer Form ("Offer Form"). (Id. ¶ 5).  Bailey received

2

and reviewed all of the documents contained in the new business package.  (Id. ¶ 6).  He did not contact GEICO with any questions. (Id.).

The two-page Declarations included in the new business package is dated April 22, 2004.  (Id. ¶ 8).  The first page sets out two messages in a lined rectangular block on the lower half of that page and is headed in bold type with the words "IMPORTANT MESSAGES." (Def.'s Mot. Summ. J., Ex. D at 1).  The first message relates to the availability of homeowner's insurance and the second states as follows:

 * * * * * * * * * * IMPORTANT MESSAGES * * * * * * * * * * *

* * *

    - PLEASE COMPLETE, SIGN AND RETURN THE OPTION FORMS
    ENCLOSED WITHIN 10 DAYS.  FAILURE TO DO SO MAY RESULT IN
    A CHANGE TO YOUR PREMIUM.

(Id.)

The second page shows uninsured motorist bodily injury liability coverage with limits in the amount of $100,000/$300,000 and underinsured motorist bodily injury liability coverage with the same limits.  (Jt. Stip. ¶ 8; Def.'s Mot. Summ. J., Ex. D at 2).  It lists a six-month premium of $29.20 as applicable to the uninsured motorist bodily injury liability coverage and a total six-month premium for all coverages of $315.70. (Jt. Stip. ¶¶ 9-

10; Def.'s Mot. Summ. J., Ex. D at 2).  With the addition of a 1%
tax or surcharge of $3.16 and the added cost of $12.12 for payment
in four monthly installments, the total came to $330.98, payable
in four consecutive monthly installments on the 26th day of each
month, commencing May 26, 2004, in the amounts of $85.19, $82.03,
$82.03 and $81.73.  (Second Amended Jt. Stip., Ex. A at 2).

  The Offer Form, drawn in the language specified by the
West Virginia Insurance Commission, provides as follows:

<u>IMPORTANT NOTICE</u>

OFFER VOID AFTER THIRTY (30) DAYS.

TO: <u>PROPOSED POLICYHOLDER (APPLICANT)</u>:

  IF YOU DO NOT RETURN THIS FORM TO YOUR INSURER
WITHIN THIRTY (30) DAYS IT MEANS YOU HAVE DECIDED NOT TO
BUY OPTIONAL UNDERINSURED COVERAGES OR OPTIONAL LIMITS
OF UNINSURED MOTORIST COVERAGE ABOVE THAT REQUIRED BY
LAW.

OR

<u>PRESENT POLICYHOLDERS</u>:

  IF YOU DO NOT RETURN THIS FORM TO YOUR INSURER
WITHIN THIRTY (30) DAYS IT MEANS YOUR COVERAGE WILL STAY
THE SAME AS IT IS NOW. THIS IS AN OPPORTUNITY TO CHANGE
THE COVERAGE YOU PRESENTLY HAVE.

(Jt. Stip. ¶ 11; Def.'s Mot. Summ. J., Ex. C at 1).  Bailey did
not return the Offer Form to GEICO, either within the ten days
directed in the Declarations message or the thirty days directed
in the Offer Form. (Jt. Stip. ¶ 12).

4

After having not received the completed Offer Form from Bailey within 30 days, GEICO adjusted his uninsured motorist bodily injury coverage (but not the underinsured coverage) to the mandatory minimum limits of $20,000/$40,000, and the premium applicable to such coverage was adjusted accordingly. (Id. ¶ 13). GEICO sent a revised two-page Declarations ("revised Declarations") to Bailey dated June 4, 2004, which he received. (Id. ¶¶ 14, 15).  The revised Declarations show on the second page uninsured motorist bodily injury liability coverage with limits of $20,000/$40,000 and underinsured motorist bodily injury liability coverage with limits of $100,000/$300,000. (Id. ¶ 16; Def.'s Mot. Summ. J., Ex. E at 2).  It also shows a premium of $17.90 applicable to the uninsured motorist bodily injury liability coverage, being $11.30 less than the original premium shown on the April 22, 2004, Declarations, with a total six-month premium of $304.40. (Jt. Stip. ¶¶ 17-18; Def.'s Mot. Summ. J., Ex. E at 2). When coupled with the 1% surcharge of $3.04 and the installment payment charge of $12.12, the total became $319.56.  (Second Amended Jt. Stip.).

On the first page of the revised Declarations, two messages are set forth in a lined rectangular block that occupies

the lower half of that page and is headed in bold type with the
words "IMPORTANT MESSAGES."  The first message relates to the
availability of homeowner's insurance and the second states as
follows:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; IMPORTANT MESSAGES &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

    -COVERAGES AND/OR LIMITS WERE CHANGED AS YOU REQUESTED
    OR DUE TO STATE REQUIREMENTS.

(Jt. Stip., Def.'s Mot. Summ. J., Ex. E at 1).

     The revised Declarations, as did the previous one,
listed the Vehicle Identification Number for the insured vehicle
incorrectly in that it contained a "V" that ought to have been a
"U."  (Jt. Stip. ¶ 19).  According to Bailey's handwritten notes
on the second page of the June 4, 2004, revised Declarations,
Bailey contacted GEICO at 4:40 p.m. on Thursday, June 10, 2004,
and informed GEICO of the correct Vehicle Identification Number.
(Id. ¶ 20).

     On July 12, 2004, Bailey was injured in an automobile
accident for which an uninsured motorist was determined to be at
fault. (Id. ¶ 22).  Bailey sought uninsured motorist coverage from
GEICO in the amount of $100,000, believing his uninsured motorist
bodily injury liability coverage limits to be $100,000/$300,000.
(Id. ¶ 23).  On or about March 29, 2005, GEICO offered Bailey

6

$20,000 in full and final settlement of his claim, which amount GEICO believes reflects Bailey's uninsured motorist bodily injury liability coverage per person limit. (Id. ¶ 24).

Bailey's petition for declaratory judgment alleges that he had provided payment for the increased uninsured motorist premium, such payment was accepted by GEICO, and that no refund was ever forthcoming.  (Pet. ¶ 22).  Bailey, pursuant to his earlier authorization, made the payment already noted of $85.19 to GEICO on May 21, 2004, prior to the reduction in uninsured motorist coverage.  (Am. Jt. Stip. ¶ 1).  At that time, Bailey's coverage had not been reduced. (Id. ¶ 2).  As the petition states, Bailey was not issued a refund by GEICO.  Rather, Bailey's premium applicable to the uninsured motorist coverage and his total six-month premium were reduced to correspond with the reduction in uninsured motorist coverage as reflected on the June 4, 2004, revised Declarations. (Id. ¶ 3).  So, too, were the installment payments which, after the first payment of $85.19, were made as follows:  June 23 $77.91, July 19 $78.03, and August 18 $78.43, with all four aggregating $319.56.  (Second Amend. Jt. Stip., Ex. A).

Accordingly, Bailey did not pay for the uninsured motorist coverage with the limits of $100,000 per person and

7

$300,000 per accident.  He instead paid the premium amount for the mandatory minimum limits, as listed on the revised Declarations.

In this declaratory judgment action, Bailey seeks a declaration that the increased uninsured motorist coverage ($100,000/ $300,000) should apply to the motor vehicle collision which took place on July 12, 2004.  (Pet. for Decl. J. at 5). Bailey's petition alleges as follows:

> [G]iven that . . . Thomas Bailey . . . had elected the higher coverage limits when he acquired the policy and was provided a declaration sheet indicating the same and had paid for said coverage, before failing to return the uninsured motorist coverage forms which inaccurately set forth the time frame to respond in a location that made said law subordinate to the Respondent's desire to solicit additional insurance business, West Virginia Code 33-6-31d(b) provides that coverage in the amount set forth on the declaration sheet shall be provided . . . . .

(Id. ¶ 18).  Bailey contends that (1) he elected the optional limits during the telephone conversation at the time of initial application; (2) he considered himself a present policyholder after the telephone conversation; (3) he did not know his coverage had been reduced; and (4) the governing statute provides that once the policy issues with the higher, optional limits intact, no further elections by the insured are necessary in order to receive those enhanced limits.

8

In GEICO's estimation, (1) the Offer Form was provided in accordance with West Virginia Code Section 33-6-31d, (2) Bailey was a "PROPOSED POLICYHOLDER (APPLICANT)" and therefore statutorily required to complete the form within 30 days, and (3) Bailey knew or should have known his coverage had been reduced.

The parties have stipulated to the facts relevant to their cross motions for summary judgment.

II.

A.   Governing Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving

party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the

10

facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

B.   The Governing Insurance Code Provisions

        Both parties assert that summary judgment is appropriate, relying upon West Virginia Code section 33-6-31d. Section 33-6-31d(a) provides:

> Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article shall be made available to the named insured <u>at the time of initial application for liability coverage</u> and upon any request of the named insured <u>on a form prepared and made available by the insurance commissioner</u>. The contents of the form shall be as prescribed by the commissioner and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage. The form shall be made available for use on or before the effective date of this section. The form shall allow any named insured to waive any or all of the coverage offered.

W. Va. Code § 33-6-31d(a)(emphasis added).

11

As noted, the statute requires that insurers make an offer of optional uninsured and underinsured motorist coverage to applicants using a "form prepared and made available by the insurance commissioner."  W. Va. Code § 33-6-31d(a).  The insurer must make the offer of optional uninsured and underinsured coverage concurrent with the initial purchase of liability coverage.  <u>Burrows v. Nationwide Mutual Insurance Company</u>, 215 W. Va. 668, 673, 600 S.E.2d 565, 570 (2004).

Subsection (b) of section 33-6-31d is also relevant and provides as follows:

> <u>Any insurer who issues a motor vehicle insurance policy in this state shall provide the form to each person who applies for the issuance of such policy by delivering the form to the applicant or by mailing the form to the applicant together with the applicant's initial premium notice. The applicant shall complete, date and sign the form and return the form to the insurer within thirty days after receipt thereof.</u> No insurer or agent thereof is liable for payment of any damages applicable under any optional uninsured or underinsured coverage authorized by section thirty-one of this article for any incident which occurs from the date the form was mailed or delivered to the applicant until the insurer receives the form and accepts payment of the appropriate premium for the coverage requested therein from the applicant: <u>Provided, That if prior to the insurer's receipt of the executed form the insurer issues a policy to the applicant which provides for such optional uninsured or underinsured coverage, the insurer shall be liable for payment of claims against such optional coverage up to the limits provided therefor in such policy</u>. The contents of a form described in this section which has been signed by an applicant shall create a presumption that such applicant and all named insureds received an effective offer of the optional coverages described in

> this section and that such applicant exercised a knowing
> and intelligent election or rejection, as the case may
> be, of such offer as specified in the form. Such
> election or rejection shall be binding on all persons
> insured under the policy.

W. Va. Code § 33-6-31d(b)(emphasis added).

As set forth in the statutory language, "the insurer has the option of either 'delivering the form to the applicant' or 'mailing the form to the applicant together with the applicant's initial premium notice.'" Burrows, 215 W. Va. at 673, 600 S.E.2d at 570 (quoting W. Va. Code § 33-6-31d(b)).

After the enactment of section 33-6-31d, the West Virginia Insurance Commission issued West Virginia Informational Letter No. 88, which "specifies the form that insurance carriers are required to use in making offers of optional uninsured and underinsured coverage." Westfield Insurance Company v. Bell, 205 W. Va. 305, 307, 507 S.E.2d 406, 408 (1998)(per curiam).  In July 2000, West Virginia Informational Letter No. 121 was issued, which revised the previous form.  (Def.'s Memo. in Supp. Mot. Summ. J.). This revised form was in effect in 2004 when Bailey contacted GEICO. Id.  GEICO's Offer Form, sent to Bailey, complies with the July 2000 requirements.

13

A presumption is set forth in Section 33-6-31d(d) which reads as follows:

> Failure of the applicant or a named insured to return the form described in this section to the insurer as required by this section within the time periods specified in this section creates a presumption that such person received an effective offer of the optional coverages described in this section and that such person exercised a knowing and intelligent rejection of such offer.  Such rejection is binding on all persons insured under the policy.

## C. Analysis

Bailey aptly contends that the initial telephone call he made to GEICO was the time of initial application, pursuant to section 33-6-31d(a).  GEICO does not have any offices in West Virginia and chooses to do its business primarily through telephone, mail, and the Internet.  That does not mean GEICO's methods of doing business, however, would justify its circumvention of the requirements of section 33-6-31d.

The statute requires the insurer to make the offer of optional limits of uninsured and underinsured motor vehicle coverage "on a form prepared and made available by the insurance commissioner."  W. Va. Code § 33-6-31d(a).  The form cannot be provided during a telephone conversation.  It is nevertheless required that the insurer provide the form by either delivery or

14

mailing, and "[t]he applicant shall complete . . . and return the form . . . within thirty days . . . ."  W. Va. Code § 33-6-31d(b).

Bailey asserts that the Legislature likely did not contemplate an insurance company that did much of its business over the phone. (Pl.'s Mot. Summ. J. at 10).   Regardless of whether an insurance company operating in this fashion was contemplated, the statute's requirements are clear: it provides that the Offer Form may be mailed together with the applicant's initial premium notice.  W. Va. Code § 33-6-31d(b).

Shortly after the telephone conversation, GEICO mailed, as earlier noted, the new business package containing, among other things, the policy, the two-page Declarations, a statement of the premiums, an invoice and the Offer Form.  (Jt. Stip. ¶ 5).  Thus, GEICO complied with the statute when it mailed the Offer Form to Bailey along with his initial premium notice.

The Offer Form sent by GEICO to Bailey is materially identical to language in the informational letter prepared by the Insurance Commissioner.  (Def.'s Mot. Summ. J. at 10).  If the Offer Form sent to the applicant is materially identical to the Commissioner's form, and if the applicant fails to return the

15

form, the presumption adopted in section 33-6-31d(d) may be invoked.  See Ingles v. State Farm Mut. Auto. Ins. Co., 265 F. Supp.2d 655, 659 (S.D. W. Va. 2003).  Failure to return the form "creates a presumption that such person received an effective offer of the optional coverages . . . and . . . exercised a knowing and intelligent rejection of such offer."  W. Va. Code § 33-6-31d(d)(emphasis added).

     The presumption having been invoked, Bailey is obliged, as a matter of law, to overcome it.  First, he asserts that he was a "PRESENT POLICYHOLDER" by the time he received the Offer Form because he had already determined his coverage, opted for higher optional limits, been provided with the policy as well as a statement of the premium, and made arrangements to pay a month later by electronic withdrawal.  Believing he qualifies as a "PRESENT POLICYHOLDER" he seizes on the portion of the Offer Form applicable to such individuals, namely, that if they do not return the Offer Form within 30 days, their uninsured motorist coverage will remain the same.  This reading would result in Bailey retaining the optional limits he requested during his initial telephonic transaction with GEICO.

     Indeed, GEICO chose to immediately issue and forward to Bailey the as-yet ineffective insurance policy for which he had

applied, and for which he had authorized payment of the first
installment on the premium, accompanied by the April 22, 2004,
Declarations that reflected, inter alia, the uninsured motorist
coverage of $100,000/$300,000 and the premium for each of the
component parts of the coverage.  Under those circumstances, it is
understandable that Bailey might believe, as he claims, when he
read the Offer Form at the same time as everything else, that he
was already a policyholder.

        This showing, however, is insufficient to overcome the
presumption.  Foremost, Bailey did not have in hand an effective
insurance policy.  He explicitly chose to remain an insured of
Nationwide, with whom he had an existing insurance policy, until
May 26, 2004.  Further, GEICO received no payment from Bailey
until it withdrew the invoiced payment from his account on May 21,
2004.

        When Bailey did not reply with the executed Offer Form
within 30 days, GEICO issued the revised Declarations on June 4,
2004, just nine days after the beginning of the policy's six-month
period on May 26, 2004.  The two-page revised Declarations quite
clearly informed Bailey in the lined rectangular block area on the
first page under "IMPORTANT MESSAGES" that "COVERAGES AND/OR
LIMITS WERE CHANGED AS YOU REQUESTED OR DUE TO STATE

                                17

REQUIREMENTS."[1]  On the second page was a list of the kinds of coverages, the limits of the coverages and the premiums as follows:

| COVERAGES | LIMITS OR DEDUCTIBLES | PREMIUMS |
|---|---|---|
| Bodily Injury Liability | | |
| Each Person/Each Occurrence | $100,000/$300,000 | 189.00 |
| Property Damage Liability | $50,000 | 77.60 |
| Uninsured Motorists Bodily Injury | | |
| Each Person/Each Occurrence | $20,000/$40,000 | 17.90 |
| Property damage | $50,000 | .00 |
| Underinsured Motorists Bodily Injury | | |
| Each Person/Each Occurrence | $100,000/$300,000 | 17.30 |
| Uninsured Motorist Property Damage | $50,000 | 2.60 |

These listings are identical to those in the Declarations of April 22, 2004, except for uninsured motorists bodily injury limits which drop from $100,000/$300,000 to $20,000/$40,000 and the premium therefor which drops from $29.20 to $17.90.  Bailey received the June 4, 2004, revised Declarations in time to call GEICO on June 10, 2004, when he informed GEICO

---

[1]This observation undercuts Bailey's additional contention that GEICO did not undertake to clarify the process to which he was subject under section 33-6-31d.  The issuance of the revised Declarations placed Bailey on inquiry notice that his orally requested coverages had been changed.

18

that one of the 17 numbers and letters making up the Vehicle
Identification Number was incorrect.  Indeed, the additional fact
that Bailey noticed the minute Vehicle Identification Number
error, and yet failed to appreciate the aforementioned other
pronounced alterations, significantly leverages the presumption.

        Although Bailey says that he did not notice the
reduction in his uninsured motorist coverage until after his
accident on July 12, 2004, it is of particular significance that
he made payment of the second installment on June 23, 2004, in the
reduced amount of $77.91, reflecting the reduced uninsured
motorist coverage.  After the July 12 accident, he made the two
remaining payments on the reduced premium, one on July 19 of
$78.03 and the other on August 18 of $78.43.

        From GEICO's perspective, it had no choice under the
circumstances but to adjust Bailey's uninsured coverage.
Otherwise, it would have ultimately charged Bailey for a higher
coverage premium than he elected.  This case well illustrates that
the Commission's Informational Letter might be due for
reexamination.  It was a sensible approach in light of existing
law, however, for GEICO to insist on Bailey's compliance with the
directives of the Insurance Commission and the Legislature

concerning the election of uninsured coverage.  GEICO would

default on that obligation at its peril.[2]

Bailey offers one other contention in the hope of

overcoming the presumption.  It is based upon the following

statutory language earlier quoted:

> No insurer or agent thereof is liable for payment of any
> damages applicable under any optional uninsured or
> underinsured coverage authorized by section thirty-one
> of this article for any incident which occurs from the
> date the form was mailed or delivered to the applicant
> until the insurer receives the form and accepts payment
> of the appropriate premium for the coverage requested
> therein from the applicant: <u>Provided, That if prior to
> the insurer's receipt of the executed form the insurer
> issues a policy to the applicant which provides for such
> optional uninsured or underinsured coverage, the insurer
> shall be liable for payment of claims against such
> optional coverage up to the limits provided therefor in
> such policy</u>.

W. Va. Code § 33-6-31d(b) (emphasis added).  Bailey contends that

the underscored language results in his receipt of the enhanced

limits, asserting that the new business package, and in particular

_____

[2]<u>See Progressive Cas. Ins. Co. v. Estate of Palomera-Ruiz</u>,
NO. 1 CA-CV 09-0065, --- P.3d ---, ---, 2010 WL 2006501, at *4
(Ariz. App. Div. May 20, 2010) ("Although the [telephone]
recording [between the insured and Progressive concerning
uninsured motorist coverage elections] provides reliable evidence
of what was said in the pertinent conversation, Progressive did
not satisfy the statutory requirement that a 'written notice' of
the offer be provided. This omission results in an expansion of .
. . [the insured's] UM coverage by operation of law.").

the April 22, 2004, Declarations, constituted "a policy . . .
which provide[d] for" the higher coverages, barring GEICO from now
either relying upon his failure to return the Offer Form or
denying him the benefit of the enhanced coverages.

Bailey misreads the provision.  The underscored language
is a proviso for the sentence that precedes it, which covers only
the situation where an occurrence happens between the mailing of
the form by the insurer and its required receipt back by the
insurer from the insured approximately 30 days later.  This
reading is confirmed by the prefatory words found in the proviso,
making it effective, in part, only in a situation where the
insurer has not yet received the "executed form."

III.

Based upon the foregoing discussion, it is ORDERED as
follows:

    1. That plaintiff's motion for summary judgment be, and it
       hereby is, denied;

    2. That defendant's motion for summary judgment be, and it
       hereby is, granted; and

21

3. That this action be, and it hereby is, dismissed and
   stricken from the docket.

   The Clerk is directed to forward copies of this written
opinion and order to all counsel of record.

DATED:  June 29, 2010

John T. Copenhaver, Jr.
United States District Judge